# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY, | Civil Action No. 3:23-cv-00783 |
| *Plaintiff,* | |
| v. | **JURY TRIAL DEMANDED** |
| DYNAMIC ONLINE MARKETING CORPORATION, INC., | June 15, 2023 |
| *Defendant.* | |

Plaintiff The Travelers Indemnity Company ("Travelers") files this Complaint against Defendant Dynamic Online Marketing Corporation, Inc. ("Defendant") and alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## <u>NATURE OF THE CASE</u>

1.      This is an action for trademark counterfeiting under 15 U.S.C. § 1114(1), trademark infringement under 15 U.S.C. § 1114(1), trademark infringement and false designation of origin under 15 U.S.C. § 1125(a), trademark dilution under 15 U.S.C. § 1125(c), unfair competition and trade practices under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq*., common law trademark infringement, unfair competition, misappropriation, and breach of written contract. Travelers' claims arise out of Defendant's infringement, counterfeiting, and dilution of Travelers' famous trademark and tradename

TRAVELERS, the Travelers umbrella logo , and the mark  (collectively, the "Travelers Marks") that Travelers and its predecessors in interest have used for

decades in connection with insurance, insurance-related products and services, and various types of merchandise.

2.      Defendant has made and/or is making unauthorized use of the Travelers Marks in connection with selling personalized merchandise, including to Travelers' independent insurance agents and brokers. Defendant has continued to do so despite multiple objections from Travelers and a written contract between Travelers and Defendant signed by both parties that prohibits such unauthorized use of the Travelers Marks. As detailed below, Defendant's unauthorized use of Travelers Marks is likely to cause confusion with and to dilute the famous Travelers Marks, and is also a breach of the parties' December 7, 2019 contract.

## THE PARTIES

3.      Plaintiff The Travelers Indemnity Company is a corporation of the State of Connecticut with a principal place of business at One Tower Square, Hartford, Connecticut 06183.

4.      Defendant Dynamic Online Marketing Corporation, Inc. is a New York corporation with a principal place of business in the United States at 941 East Lovejoy Street, Buffalo, New York 14206.

## JURISDICTION AND VENUE

5.      This action arises under the federal Trademark Act, 15 U.S.C. § 1051, *et seq*., and the related laws of the State of Connecticut. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b). Because the parties are citizens of different states and the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, this Court also has

jurisdiction under 28 U.S.C. § 1332. Further, this Court has supplemental jurisdiction over Travelers' state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are substantially related to Travelers' federal claims and arise out of the same operative facts.

6.      This Court has personal jurisdiction over Defendant under Conn. Gen. Stat. § 52-59b and venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Travelers is located and is being harmed in this district, which Defendant should reasonably expect from its interstate business, Defendant conducts business and services customers in this district, and/or the activity about which Travelers complains has taken place and is continuing to take place in this district.

7.      In addition, this Court has personal jurisdiction over Defendant and venue is proper in this district pursuant to the provisions of the parties' December 7, 2019 contract that forms a basis for this action, in which Defendant consented to venue and personal jurisdiction in this District.

### TRAVELERS, ITS INSURANCE PRODUCTS AND SERVICES, AND ITS FAMOUS TRADEMARKS

8.      Travelers has been in the insurance business for more than 160 years.

9.      Travelers has long been one of the leading providers of a variety of personal and commercial insurance products and services to individuals, businesses, and organizations in the United States. Travelers is a top-10 writer of personal property and casualty insurance, including auto insurance. Travelers is also the second largest commercial insurance carrier and number one writer of workers compensation insurance in the United States. Travelers has approximately 30,000 employees as of September 2022.

10.    Travelers' products and services are sold in all 50 states through its independent agents and brokers, exclusive agents and brokers, direct marketing (including toll-free telephone numbers and Internet websites), and/or salaried employees. Travelers has relationships with more than 13,500 independent agents and brokers selling Travelers' insurance products and services in the United States, and it has had a similar number of independent agents and brokers for many years.

11.    Travelers has been a Fortune 500 company since 1995. Travelers is the only property and casualty insurance company included in the Dow Jones Industrial Average, the stock market index that tracks the performance of 30 of the largest corporations in America. Travelers has been a part of the Dow Jones Industrial Average since June 2009.

12.    For more than a century, Travelers has used the TRAVELERS trademark and trade name for providing insurance products and services, including the underwriting and issuing of property and casualty insurance and related claims services. For decades, Travelers has also used the umbrella trademark shown below and variations thereof as its corporate logo and trademark for providing its insurance products and services. The Travelers umbrella trademark has been in continuous use for insurance services since as early as 1960 by Travelers and its predecessors-in-interest to the mark.



13.    Travelers uses the Travelers umbrella trademark alone and together with its TRAVELERS trademark and tradename, including since as early as 2007 in the formats shown below. The TRAVELERS trademark and tradename and the Travelers umbrella trademark each create a separate commercial impression as shown below.



14.     In addition to its insurance products and services, Travelers has for several years distributed and/or sold a wide range of merchandise under the Travelers Marks including, but not limited to, pens, golf accessories, bags, totes, notebooks, and apparel. Travelers offers and promotes these products, among others, in a variety of ways, including as giveaways to its agents, brokers, and customers, and on its online retail store The Travelers Online Store, currently located at www.travelersonlinestore.com. Shown below are representative examples of various products featuring the Travelers Marks, as offered by The Travelers Online Store.





15.     In addition to its strong common law rights in the Travelers Marks based on use of those marks for decades, Travelers owns, among others, the following valid and subsisting United States trademark registrations for marks comprised of or containing the Travelers Marks:

| Mark/<br>Registration & Use<br>Information | Goods/Services |
|---|---|
| TRAVELERS<br><br>Reg. No. 1611053<br>Reg. Date: 08-28-1990<br>App. Date: 06-29-1988<br>First Use: as early as 1865 | Calendars, pens, and newsletters, bulletins in the field of insurance in Class 16 (First use: 1936)<br><br>Golf ball markers in Class 28 (First use: 1969)<br><br>Direct mail marketing for insurance agents, promoting the sale of goods and/or services of others by advertising campaigns, counseling in regard to cost management, and rehabilitation services, namely, cost control and job placement services in Class 35 (First use: February 1978)<br><br>Underwriting and administering services for commercial, personal and group insurance, fidelity, surety and guaranty bonding services, credit card services, and counseling services in regard to insurance claim administration in Class 36 (First use: March 1, 1865)<br><br>(Among other goods and services in Classes 38, 41, and, 42) |
| <br>Reg. No. 1161313<br>Reg. Date: 07-14-1981<br>App. Date: 12-19-1979<br>First Use: 1961 | Underwriting casualty, fire, marine and inland marine insurance services; fidelity, surety and guaranty bonding services; agency and brokerage services in connection with the preceding named services, and counseling in regard to accident prevention in Class 36 |
| <br>Reg. No. 3417048<br>Reg. Date: 04-29-2008 | Insurance underwriting services in the fields of property and casualty, fire, allied lines, farmowners multiple peril, homeowners multiple peril, commercial multiple peril, ocean marine, inland marine, earthquake, workers' compensation, other liability, product liability, private passenger auto liability, commercial auto liability, auto physical damage, fidelity, surety, burglary and theft, boiler and machinery, and reinsurance; insurance claims services and administration; insurance claims processing insurance claims |

| Mark/ Registration & Use Information | Goods/Services |
|---|---|
| App. Date: 03-15-2007<br>First Use: 1961 | adjusting; insurance agency and brokerage services, namely, policyholder services and services to agents and brokers;  providing information in insurance matters risk management and risk management consultation in Class 36 |
| <br><br>Reg. No. 3417049<br>Reg. Date: 04-29-2008<br>App. Date: 03-15-2007<br>First Use: 1961 | Insurance underwriting services in the fields of property and casualty, fire, allied lines, farmowners multiple peril, homeowners multiple peril, commercial multiple peril, ocean marine, inland marine, earthquake, workers' compensation, other liability, product liability, private passenger auto liability, commercial auto liability, auto physical damage, fidelity, surety, burglary and theft, boiler and machinery, and reinsurance; insurance claims services and administration; insurance claims processing; insurance claims adjusting; insurance agency and brokerage services, namely, policyholder services and services to agents and brokers; providing information in insurance matters; risk management and risk management consultation in Class 36 |
| <br><br>Reg. No. 3494647<br>Reg. Date: 09-02-2008<br>App. Date: 04-02-2007<br>First Use: 02-27-2007 | Promoting the sale of goods and/or services of others through the development and distribution of printed material; direct mail marketing services for others in the field of insurance; business counseling in regard to cost management; employment rehabilitation services, namely, medical cost control management, business consultation in the field of workers' compensation, employee benefits and employment return-to-work placement services in Class 35<br><br>Insurance underwriting services in the fields of property and casualty, fire, allied lines, farmowners multiple peril, homeowners multiple peril, commercial multiple peril, ocean marine, inland marine, earthquake, workers' compensation, other liability, product liability, private passenger auto liability, commercial auto liability, auto physical damage, fidelity, surety, burglary and theft, boiler and machinery, and reinsurance; claims adjustment in the field of insurance;  insurance claims processing and administration; risk control and loss prevention consultation; risk control and loss prevention services, namely, risk management; electronic processing of insurance claims; insurance agency and brokerage services, namely, policyholder services and services to agents and brokers; providing information in insurance matters in Class 36 |

8

| Mark/ Registration & Use Information | Goods/Services |
|---|---|
| | Educational services, namely, providing training programs in the field of insurance in Class 41 |
| | Providing on-line non-downloadable software in the field of insurance in Class 42 |
| **TRAVELERS**<br><br>Reg. No. 3494648<br>Reg. Date: 09-02-2008<br>App. Date: 04-02-2007<br>First Use: 02-27-2007 | Promoting the sale of goods and/or services of others through the development and distribution of printed material; direct mail marketing services for others in the field of insurance; business counseling in regard to cost management; employment rehabilitation services, namely, medical cost control management, business consultation in the field of workers' compensation, employee benefits and employment return-to-work placement services in Class 35<br><br>Insurance underwriting services in the fields of property and casualty, fire, allied lines, farmowners multiple peril, homeowners multiple peril, commercial multiple peril, ocean marine, inland marine, earthquake, workers' compensation, other liability, product liability, private passenger auto liability, commercial auto liability, auto physical damage, fidelity, surety, burglary and theft, boiler and machinery, and reinsurance; claims adjustment in the field of insurance, insurance claims processing and administration, risk control and loss prevention consultation; risk control and loss prevention services, namely, risk management; insurance claims and; insurance agency and brokerage services, namely, policyholder services and services to agents and brokers; providing information in insurance matters in Class 36<br><br>Educational services, namely, providing training programs in the field of insurance in Class 41<br><br>Providing on-line non-downloadable software in the field of insurance in Class 42 |
| **TRAVELERS**<br><br>Reg. No. 3991520<br>Reg. Date: 07-12-2011<br>App. Date: 07-06-2009 | Insurance underwriting services in the fields of property and casualty, commercial lines, farm, auto commercial, boiler and machinery, commercial multi peril, liability, inland marine, fidelity, surety, crime, workers compensation, property, identity fraud reimbursement, kidnap and ransom, excess and surplus, personal lines, personal auto, homeowners, high valued homeowners, dwelling fire, boat/yacht, personal articles floater, wedding |

| Mark/<br>Registration & Use<br>Information | Goods/Services |
|---|---|
| First Use: 02-27-2007 | insurance, and reinsurance; insurance claims administration; insurance claims processing; insurance claims adjusting; insurance agency services; providing information in the field of insurance, providing a website with information and resources in the field of insurance; and insurance and insurance-related services in the nature of loss prevention and risk control management for others in Class 36 |
| **TRAVELERS**<br><br>Reg. No. 3991521<br>Reg. Date: 07-12-2011<br>App. Date: 07-06-2009<br>First Use: 02-27-2007 | Insurance underwriting services in the fields of property and casualty, commercial lines, farm, auto commercial, boiler and machinery, commercial multi peril, liability, inland marine, fidelity, surety, crime, workers compensation, property, identity fraud reimbursement, kidnap and ransom, excess and surplus, personal lines, personal auto, homeowners, high valued homeowners, dwelling fire, boat/yacht, personal articles floater, wedding insurance, and reinsurance; insurance claims administration; insurance claims processing; insurance claims adjusting; insurance agency services; providing information in the field of insurance; providing a website with information and resources in the field of insurance; and insurance and insurance-related services in the nature of loss prevention and risk control management for others in Class 36 |
| <br><br>Reg. No. 4085572<br>Reg. Date: 01-17-2012<br>App. Date: 07-06-2009<br>First Use: 12-31-1961 | Insurance underwriting services in the fields of property and casualty, commercial lines, farm, auto commercial, boiler and machinery, commercial multi peril, liability, inland marine, fidelity, surety, crime, workers compensation, property, personal lines, personal auto, homeowners, boat/yacht, dwelling fire, identity fraud reimbursement, kidnap and ransom, excess and surplus, high valued homeowners, personal articles floater, wedding insurance, and reinsurance; insurance claims administration; insurance claims processing; insurance claims adjusting; insurance agency services; providing information in the field of insurance; providing a website with information and resources in the field of insurance; and insurance and insurance-related services in the nature of loss prevention and risk control management for others in Class 36 |
|  | Insurance underwriting services in the fields of property and casualty, commercial lines, farm, auto commercial, boiler and machinery, commercial multi peril, liability, inland marine, fidelity, surety, crime, workers compensation, property, personal lines, personal auto, homeowners, boat/yacht, dwelling fire, identity fraud reimbursement, kidnap and ransom, excess and surplus, high |

| Mark/ Registration & Use Information | Goods/Services |
|---|---|
| Reg. No. 4085573<br>Reg. Date: 01-17-2012<br>App. Date: 07-06-2009<br>First Use: 12-31-1961 | valued homeowners, personal articles floater, wedding insurance, and reinsurance; insurance claims administration; insurance claims processing; insurance claims adjusting; insurance agency services; providing information in the field of insurance; providing a website with information and resources in the field of insurance; and insurance and insurance-related services in the nature of loss prevention and risk control management for others in Class 36 |
| <br>Reg. No. 4554402<br>Reg. Date: 06-24-2014<br>App. Date: 04-15-2013<br>First Use: 2010 | Downloadable software in the nature of a mobile application providing users with the ability to collect, view, manage, store, and transmit auto accident information including images, obtain auto accident guidance, use mapping features to locate and contact vehicle and travel related services, and providing policyholders with the ability to file automobile insurance claims in Class 9 |
| <br>Reg. No. 4554401<br>Reg. Date: 06-24-2014<br>App. Date: 04-15-2013<br>First Use: 2010 | Downloadable software in the nature of a mobile application providing users with the ability to collect, view, manage, store, and transmit auto accident information including images, obtain auto accident guidance, use mapping features to locate and contact vehicle and travel related services, and providing policyholders with the ability to file automobile insurance claims in Class 9 |
| <br>Reg. No. 4566720<br>Reg. Date: 07-15-2014<br>App. Date: 05-15-2013<br>First Use: as early as 2007 | Sanitizing preparations, namely, hand sanitizers in Class 5 (First use: 11-22-2010)<br><br>Mouse pads; and stands for electronic devices, namely, cell phones in Class 9 (First use: 01-22-2009)<br><br>Flashlights in Class 11 (First use: 11-13-2012)<br><br>Lunch bags made of textile; note pads; padfolios; pens; pencils; and notebooks in Class 16 (First use: 03-29-2007)<br><br>Picture and photograph frames in Class 20 (First use: 09-21-2012) |

| Mark/ Registration & Use Information | Goods/Services |
|---|---|
| | Lanyards for holding badges in Class 22 (First use: 08-08-2007)<br><br>Textile tablecloths in Class 24 (First use: 02-27-2010) |
| **TRAVELERS** J<br><br>Reg. No. 4815567<br>Reg. Date: 09-22-2015<br>App Date: 05-15-2013<br>First Use: 03-23-2007 | Portable coolers; mugs; water bottles sold empty; and drinking glasses, namely, tumblers in Class 21 |

Printouts of the details of these registrations are attached as **Exhibit A**.

16.     The registrations listed above are incontestable and constitute *conclusive* evidence of Travelers' ownership of and exclusive rights to use the Travelers Marks in connection with the products and services recited in those registrations.

17.     Travelers has established considerable and valuable trademark rights and goodwill in the Travelers Marks by virtue of its long use and registration of those trademarks, the substantial promotional and marketing efforts under and in connection with those trademarks and the expenditure of vast sums for such efforts, the massive sales of products and services offered under those trademarks, and third-party acclaim and attention.

18.     Revenues generated from products and services sold in connection with the Travelers Marks over the years have been substantial, including revenues exceeding $300 billion since 2010 alone. Travelers also had revenues of many billions of dollars in revenue under the Travelers Marks prior to 2010.

19.     Travelers has spent many millions of dollars over the years advertising and promoting its products and services throughout the United States under the Travelers Marks in various media and forms (e.g., television, magazines, newspapers, websites, and sponsorships), including tens of millions of dollars annually for many years.

20.     Travelers has for many years engaged in extensive television advertising prominently featuring the Travelers Marks to promote its insurance and insurance-related products and services, as shown in the representative examples below. Travelers' television advertisements prominently featuring the Travelers Marks have for years appeared on major national television networks and cable television networks (e.g., ESPN), including during various prime-time television shows, feature films on television, news broadcasts, documentaries, and professional sporting events watched by millions. Between 2011 through November 2022 alone, Travelers' commercials, all of which prominently displayed the Travelers Marks, were broadcast more than 100,000 times in the U.S., with more than 22 *billion* total impressions (i.e., the number of times the commercial is viewed) during that time period.



**1968**



**1986**



**1991**



**2007**



**2012**



**2010**



**2015**



**2015**



**2016**



**2019**



**2020**



**2022**

21.     Travelers has prominently displayed the mark **TRAVELERS** in television commercials continuously since 2007, including as shown in the above examples.

22.     Travelers has also engaged for many years in extensive online advertising prominently featuring the Travelers Marks to promote its insurance and insurance-related products and services. Travelers prominently displays its Travelers Marks on its own websites, including http://www.travelers.com, on its social media pages (e.g., Facebook, Twitter, YouTube, LinkedIn), and through significant advertising on third-party websites.

23.     Travelers also displays the Travelers Marks on all of its printed marketing materials, including on its insurance policies and consumer communications (e.g., invoices, notices, claims communications, auto insurance cards) as shown in the examples below, exposing countless consumers to the Travelers Marks.

15







24.    The Travelers Marks have also been prominently used in connection with high-profile sponsorships for years. For example, since 2007, Travelers has been the title sponsor of the PGA TOUR's annual *Travelers Championship* golf tournament. Through this sponsorship, millions of people are exposed to the Travelers Marks, as they are prominently featured throughout the week-long tournament, including as the tournament's logo; on tee markers, caddy

bibs, hospitality tents, and a winner's jacket; and as an immensely popular floating umbrella-shaped green, as shown in the examples below.



25.     In connection with the *Travelers Championship*, Travelers offers and sells a wide variety of merchandise to patrons attending the event, and to its agents and brokers to promote the event including, but not limited to, golf ball markers and divot tools, apparel, golf balls, and hats, as shown in the examples below. Each prominently features the Travelers Marks.



26.     Travelers has also for years been a sponsor of University of Connecticut ("UConn") athletics, including UConn's NCAA Division I football and basketball teams. The UConn women's basketball program is one of the most successful Division I programs in the

country, winning a record 11 national championships. The UConn men's basketball team has also been very successful, having won five national championships over the years, including in 2023. The Travelers Marks prominently appear at UConn sporting events, including at UConn's football, baseball, and hockey stadiums and arenas as shown in the examples below. These uses of the Travelers Marks are visible not only to the fans attending these sporting events but also to the countless fans watching these events on television and through internet streaming.










27.     For many years, Travelers has also been a sponsor of the New York City Ballet ("NYCB"). Performing out of the famed Lincoln Center in New York City, the NYCB is one of the foremost dance companies in the world, with a roster of extraordinary dancers and an unparalleled repertory. Among other uses in connection with the NYCB, the Travelers Marks have been prominently displayed on the NYCB home page, in the NYCB theater, and in NYCB advertisements, as shown in the examples below.







28.     In addition, the Travelers Marks have for many years received extensive unsolicited media attention nationwide, including in many national, regional, and local newspapers, blogs, websites, press releases, and trade journals, among other outlets. Among the

countless articles that have been written about Travelers and its insurance and insurance-related products and services, many have specifically recognized the brand recognition, strength, and/or fame of the Travelers Marks by referring to them as either "famous," an "icon of instant recognition," "iconic," or a "signature" logo, among other superlatives. Such media attention of the Travelers Marks has occurred in leading publications read or viewed by millions of people, including *The New York Times*, *The Wall Street Journal*, and *Adweek*, to name a few, including as shown in the examples below.

| DATE | AUTHOR, ARTICLE TITLE, PUBLICATION NAME, EXCERPT<br>(emphases added) |
|---|---|
| 12-02-1995 | *Another insurance casualty*, The Economist, "Ultimately, Travelers was able to offer the highest price. **Thanks to its strong brand name and cost-cutting prowess**, it is now in a good position to capitalise on the trends transforming America's troubled property-casualty industry." |
| 05-24-1997 | David Gonzalez, "Criticism Never Rains But It Pours," *The New York Times,* "As corporate logos go, **the red Travelers umbrella ranks with** *icons* **of instant recognition** like Prudential's rock or Disney's mouse ears. 'It's a beautiful device,' said Tom De Vito, a retired ad man. **'The minute you see the red umbrella, you say Travelers.'**" |
| 09-30-1997 | Allan Sloan, "Buffet's Decision About Salomon Proves Everyone Makes Mistakes," *The Washington Post*, "Consider, if you will, last week's announcement of a $9 billion takeover of Salomon Brothers Inc., the giant investment banking house, by Travelers Group Inc., a financial conglomerate *best known* for its red umbrella logo." |
| 06-08-2006 | Diane Levick, *Travelers In Spotlight; Re-Branding, Ad Campaign Will Raise Hartford's Profile*, Hartford Courant, "The decision to go solo with the Travelers name in U.S. marketing again won praise Wednesday in Hartford. 'I think it's wonderful,' said Robert F. Flynn, executive director of the Insurance and Financial Services Cluster, a state-corporate partnership to foster the industries. '**Travelers is such a renowned name throughout the nation**.'" |
| 06-21-2009 | *Business Wire*, "2009 Travelers Championship Swings into Action," **"[T]he company's** *famous logo*, **the red umbrella, which is infused throughout the branding** of the tournament…." |

| DATE | AUTHOR, ARTICLE TITLE, PUBLICATION NAME, EXCERPT<br>(emphases added) |
|---|---|
| 12-04-2009 | B. Garcia, "Insurers Learn the Art of the Deal," *The Miami Herald*, "At the Affordable Art Fair in Manhattan, also sponsored by Travelers, the insurer runs a packing station so buyers can ship their new artwork home, wrapped and sealed with packing tape **emblazoned with the Travelers' *signature* red umbrella logo**." |
| 07-16-2010 | S. McClellan, "100 Mil. Travelers Biz Goes to MediaCom," *Adweek*, **"Travelers, whose *iconic* red umbrella logo appears in much of its advertising…."** |
| 10-12-2011 | *Business Wire*, "Travelers Red Umbrella to be Featured at the National Trademark Expo October 14-15," **"Travelers will showcase its *iconic* red umbrella ….."** |
| 06-07-2013 | *South Carolina Bankers Association Selects Travelers as Preferred Provider for State's Community Banks; Travelers SelectOne+® offers flexible, customizable coverage, including for cyber risks*, Business Wire, ""Travelers brings a wealth of benefits to the community bankers who are serving our residents across the state," said Fred Green, President and Chief Executive Officer of the South Carolina Bankers Association. "**I believe their strong brand and comprehensive products offer a tremendous value to our members**."" |
| 08-28-2016 | Natasha Singer, "Jay Fishman, 63; Led Travelers During Financial Crisis," *The New York Times*, "By investing its insurance premiums in more stable vehicles, like fixed-income securities, he helped make **Travelers, known for its *signature* red umbrella logo**, a high-performing financial company." |
| 06-17-2018 | Chris Brodeur, "If You're Going," *The Hartford Courant*, "All the standard handheld fare is offered, headlined by a signature burger that has **the *iconic* red Travelers umbrella** stamped into its bun." |

29.    The renown of the Travelers Marks has also been recognized in a number of books about brands. For example, the book *America's Greatest Brands* (2009) states: "[f]ew promotional images are as iconic as the Travelers red umbrella." And *Iconic America: A Roller Coaster Ride Through the Eye-Popping Panorama of American Pop Culture* by Tommy Hilfiger (2011) says "[t]he red TRAVELERS umbrella is one of the great American business icons. . . ."

The Travelers Marks appear in these publications alongside other household brands such as NASCAR, CAMPBELL'S, NFL, SUBWAY, and others.

30.    As a result of Travelers' long and extensive use of the Travelers Marks, and the significant sales, promotion, advertising, third-party acclaim, and commercial success under the marks, each of the Travelers Marks have achieved such widespread public exposure and recognition that they possess a high degree of inherent and acquired distinctiveness and have been well known and famous among the general consuming public of the United States for many years.

## DEFENDANT'S WRONGFUL ACTS

### Defendant and Its Business

31.    According to the website www.domc.net, Defendant is a "full-service promotional products company with an impressive selection of custom printed, personalized giveaways that meet the needs of many sectors," including to customers in the "financial services" industry. Defendant's customized decoration capabilities includes printing, silk-screening, embroidery, and laser-engraving of products.

32.    According to the "contact us" page of its website, Defendant does business in the United States at 941 East Lovejoy Street, Buffalo NY 14206.

33.    Defendant offers a wide variety of promotional products that can be engraved or otherwise customized with the name and/or logo of the purchasing customer. Such products include, but are not limited to, pens, golf repair tools and ball markers, and corkscrews. Shown below are representative examples of these types of promotional products, among others, that Defendant offers to customers in the financial services industry.







34.    Defendant offers and promotes its products for sale via its websites at

www.domc.net and www.domc.co and via promotional emails to prospective customers.

**Defendant's 2018 and 2019 Unauthorized Use of the Travelers Marks**

35.    On March 28, 2018, Defendant sent a promotional email to a Travelers agent

offering TRAVELERS branded corkscrews for sale. As shown in the screenshot below,

Defendant prominently used the TRAVELERS name and mark in the email's subject line and

included a photograph of the TRAVELERS branded corkscrews that Defendant was offering for

sale.



36.    Defendant's March 28, 2018 promotional email also contained a testimonial

purportedly from a Travelers employee, as shown in the example below.

37.     A true and correct copy of Defendant March 28, 2018 email is attached as

**Exhibit B.**

38.     On March 28, 2018, Travelers sent a letter to Defendant objecting to Defendant's

unauthorized use of the Travelers Marks and asking Defendant to stop such use. Defendant did

not respond.

39.     Thereafter, Travelers, including through outside counsel, sent additional follow-

up correspondence to Defendant on April 10, 2018, April 18, 2018, and May 2, 2018 regarding

Defendant's unauthorized use of the Travelers Marks. Defendant eventually responded on May

8, 2018 and after additional exchanges with Travelers' outside counsel, Defendant agreed on

June 11, 2018, to not use the Travelers Marks in the future. Specifically, Defendant stated via

email: "This is to confirm that Dynamic Marketing has stopped using and will not in the future

use any of Travelers' trademarks including, but not limited to, selling, offering to sell, promoting,

and advertising any products bearing any of Travelers' trademarks to any person or business

(including, but not limited to, Travelers' employees and Travelers' insurance agents and

brokers)."

40.     Despite Defendant's June 11, 2018 agreement to stop using the Travelers Marks,

on August 26, 2019 Defendant sent another promotional email to a Travelers agent, this time

offering TRAVELERS branded pens for sale. As shown in the screenshot below, Defendant

prominently used the TRAVELERS name and mark in the email's subject line and included a

photograph of the TRAVELERS branded pens that Defendant was offering for sale.



41.     Defendant's August 26, 2019 promotional email also contained a testimonial

purportedly from a Travelers employee, as shown in the example below.

> *"Best pen I have ever used.*
> *Writes very smooth. I especially*
> *like the weight and feel to them.*
> *My clients often comment*
> *how nice they are"*
> *- Wayne C., Travelers*

42.     A true and correct copy of Defendant's August 26, 2019 email is attached as

**Exhibit C.**

**The December 7, 2019 Contract**

43.     On October 4, 2019, Travelers sent a letter to Defendant objecting to Defendant's resumed, unauthorized use of the Travelers Marks in connection with the August 26, 2019 promotional email, but Defendant did not respond. Travelers followed-up with additional correspondence and telephone messages on October 15, 2019, October 30, 2019, November 13, 2019, and December 3, 2019.

44.     On December 7, 2019, Travelers and Defendant entered into a signed written contract (the "December 7, 2019 Contract") regarding Defendant's unauthorized use of the Travelers Marks. A true and correct copy of the December 7, 2019 Contract is attached as **Exhibit D.**

45.     As part of the December 7, 2019 Contract, Defendant agreed to, among other things:

> [P]ermanently cease all use of the Travelers Marks including, but not limited to, selling, offering to sell, promoting, and advertising the Infringing Products and any other products and materials bearing any of the Travelers Marks. [Defendant] will also destroy all materials bearing one or more of the Travelers Marks that are used to apply the Travelers Marks to the Infringing Products including, but not limited to, screens, decals, and molds.

46.     The December 7, 2019 Contract also provides that in the event Defendant breaches the December 7, 2019 Contract, Defendant would be required to pay Travelers $5,000 in liquidated damages per breach, as well as Travelers' costs and attorneys' fees incurred in addressing each such breach and any other monetary or equitable relief that a court may award:

> If [Defendant] breaches Paragraphs 2 or 3 of this Agreement in any manner, in addition to any monetary, equitable, or other relief awarded by a court or other tribunal to Travelers, [Defendant] will pay to Travelers liquidated damages in the amount of $5,000 for each such breach as well as Travelers' costs and attorneys' fees incurred in addressing each such breach.

47.     The December 7, 2019 Contract further provides that Connecticut laws controls the interpretation of the contract and that Connecticut is the exclusive venue for any dispute arising out of or related to the December 7, 2019 Contract.

**Defendant's Breach of the December 7, 2019 Contract and Additional Infringements**

48.     In breach of the December 7, 2019 Contract, Defendant on February 15, 2023 sent another promotional email to a Travelers agent offering the same TRAVELERS branded pens for sale that Defendant previously offered in August 2019. As shown in the screenshots below, Defendant again prominently used the TRAVELERS name and mark in the email's subject line, included a photograph of the TRAVELERS branded pens that Defendant was offering for sale, and a testimonial purportedly from a Travelers employee. A true and correct copy of Defendant's February 15, 2023 email is attached as **Exhibit E.**



"Best pen I have ever used.
Writes very smooth. I especially
like the weight and feel. My clients
often comment how nice they are."
- Wayne C., Travelers

49.     On March 8, 2023, Defendant sent another promotional email to a Travelers

agent, this time offering TRAVELERS branded golf ball markers for sale. As shown in the

screenshots below, Defendant's March 8, 2023 promotional email similarly includes prominent

use of the TRAVELERS name and mark in the email subject line, a photograph of the

TRAVELERS branded product for sale, and a testimonial purportedly from a Travelers

employee. A true and correct copy of Defendant's March 8, 2023 email is attached as **Exhibit F.**



50.     On April 20, 2023, Travelers sent a letter to Defendant objecting to Defendant's resumed, unauthorized use of the Travelers Marks.

51.     Defendant is not and never has been an authorized agent or licensee of Travelers, and is not and never has been authorized to use any of the Travelers Marks for any products or services.

52.     Defendant's ongoing unauthorized use of the Travelers Marks creates the false impression that Defendant is a part of Travelers, an approved vendor or partner of Travelers, that

Travelers endorses or approves of Defendant or Defendant's products or services, and/or that Defendant is otherwise affiliated with or connected with Travelers or Travelers' products and services when no such connection, affiliation, or endorsement exists or ever existed. Consumers are especially likely to believe that such affiliation exists here because Travelers itself promotes and sells a wide variety of promotional items to agents, brokers, and consumers of all types. Defendant's ongoing unauthorized use of the Travelers' Marks is also in breach of the December 7, 2019 Contract.

53.     Defendant's continued unauthorized use of the Travelers Marks in connection with offering and selling various products despite knowledge of Travelers' trademark rights and Travelers' objections demonstrates that Defendant is willfully trading upon the goodwill of Travelers and the Travelers Marks and/or recklessly disregarding, and continue to disregard, Travelers' rights.

## INJURY TO TRAVELERS AND THE PUBLIC

54.     Defendant's actions described above with respect to the unauthorized use of the Travelers Marks have damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure Travelers, the Travelers Marks, and Travelers' reputation and goodwill associated with the Travelers Marks. Defendant's actions also damage the public's interest in being free from confusion as to the source, sponsorship, and/or affiliation of Defendant's services.

55.     Defendant's unauthorized use of the Travelers Marks is likely to cause confusion, mistake, or deception as to the source or origin of Defendant's products and commercial activities, and is likely to falsely suggest a sponsorship, connection, license, or association of

32

Defendant and/or its products and services with Travelers and/or Travelers' services.

56.     Defendant's unauthorized use of the Travelers Marks is likely to dilute the distinctiveness of the famous Travelers Marks.

57.     Defendant was aware of Travelers' prior rights in the famous Travelers Marks before using the Travelers Marks and thus Defendant has acted willfully with respect to Travelers' prior trademark rights.

58.     Travelers has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF

### *(Trademark Counterfeiting Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))*

59.     Travelers repeats and realleges each and every allegation set forth above.

60.     Travelers owns a number of federal trademark registrations for the Travelers Marks for various goods and services, including U.S. Registration No. 1611053 for "pens" and "golf ball markers."

61.     Without Travelers' consent, Defendant intentionally used in commerce the TRAVELERS mark and/or substantially indistinguishable variations or counterfeits thereof, as defined under 15 U.S.C. § 1116(d)(1)(B)(i), in connection with the sale, offering for sale, and/or distribution of the pens and golf ball markers.

62.     Without Travelers' consent, Defendant reproduced, counterfeited, copied, and/or colorably imitated the TRAVELERS mark and applied such reproduction, counterfeit, copy, and/or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements, as defined under 15 U.S.C. § 1116(d)(1)(B)(ii), intended to be used in commerce

upon or in connection with the sale, offering for sale, distribution, or advertising of pens and golf ball markers in a manner likely to cause confusion, or to cause mistake, or to deceive.

63.     Defendant's actions described above are likely to cause confusion, mistake, or to deceive as to the origin, sponsorship, or approval of the Defendant's pens and golf ball markers described above, Defendant's services, and commercial activities, and thus constitute counterfeiting of Travelers' federally registered TRAVELERS mark identified above in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

64.     The actions of Defendant described above have at all times relevant to this action been willful.

65.     As a direct and proximate result of the actions of Defendant as alleged above, Travelers has been and will continue to be damaged and irreparably harmed.

66.     Travelers has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### (Trademark Infringement Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))

67.     Travelers repeats and realleges each and every allegation set forth above.

68.     Without Travelers' consent, Defendant used in commerce the Travelers Marks, and continue to use in commerce the Travelers Marks, as described above, which are reproductions, copies, and/or colorable imitations of Travelers' registered marks, as described above, in connection with the offering, sale, and advertising of Defendant's products, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

69.     The actions of Defendant described above have at all times relevant to this action been willful.

70.     As a direct and proximate result of the actions of Defendant as alleged above, Travelers has been and will continue to be damaged and irreparably harmed.

71.     Travelers has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
*(Trademark Infringement, False Designation of Origin, and Unfair Competition Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))*

72.     Travelers repeats and realleges each and every allegation set forth above.

73.     Defendant's use of the Travelers Marks, as described above, is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendant's products, services, and commercial activities, and thus constitutes trademark infringement, false designation of origin, and unfair competition with respect to the Travelers Marks, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

74.     The actions of Defendant described above have at all times relevant to this action been willful.

75.     As a direct and proximate result of the actions of Defendant as alleged above, Travelers has been and will continue to be damaged and irreparably harmed.

76.     Travelers has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
*(Trademark Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))*

77.     Travelers repeats and realleges each and every allegation set forth above.

78.     Based at least on the inherent and acquired distinctiveness of the Travelers Marks; the duration and extent of use of these trademarks; the commercial success under these trademarks; the duration and extent of advertising featuring these trademarks and the vast sums of money expended on such activities; Travelers' nationwide sales and advertising of its products

and services under or featuring these trademarks; the degree of public recognition and media attention of the Travelers Marks; and Travelers' federal registrations of these trademarks, the Travelers Marks have become famous, as that term is used in Section 43(c) of the Lanham Act, and have been famous for many years.

79.     Defendant's use of the Travelers Marks, as described above, all occurring after the Travelers Marks became famous, is likely to dilute the famous Travelers Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

80.     The actions of Defendant described above have at all times relevant to this action been willful.

81.     As a direct and proximate result of the actions of Defendant as alleged above, Travelers has been and will continue to be damaged and irreparably harmed.

82.     Travelers has no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
*(Common Law Trademark Infringement, Unfair Competition, and Misappropriation)*

83.     Travelers repeats and realleges each and every allegation set forth above.

84.     Defendant's use of the Travelers Marks, as described above, constitute common law trademark infringement, unfair competition, and misappropriation of Travelers' goodwill under the common law of Connecticut.

85.     As a direct and proximate result of the actions of Defendant alleged above, Travelers has been and will continue to be damaged and irreparably harmed.

86.     Travelers has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
### *(Unfair Competition and Trade Practices Under Conn. Gen. Stat. §§ 42-110b-q.)*

87.     Travelers repeats and realleges each and every allegation set forth above.

88.     By engaging in the acts alleged above, Defendant has engaged in conduct: (a) that is offensive to public policy, governing statutes, common law principles, and/or established concepts of fairness, and/or (b) that has caused substantial injury to consumers.

89.     Defendant committed such acts, and continues to commit such acts, in the conduct of trade or commerce.

90.     Travelers has suffered, and if Defendant is not enjoined, will continue to suffer, an ascertainable loss of money or property.

91.     By virtue of the above conduct, Defendant has engaged in unfair competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*.

92.     The actions of Defendant described above have at all times relevant to this action been willful.

93.     As a direct and proximate result of the actions of Defendant alleged above, Travelers has been and will continue to be damaged and irreparably harmed.

94.     Counsel for Travelers has electronically transmitted a copy of this Complaint to the Attorney General and the Commissioner of Consumer Protection.

## SEVENTH CLAIM FOR RELIEF
### *(Breach of Contract)*

95.     Travelers repeats and realleges each and every allegation set forth above.

96.     On December 7, 2019, Travelers and Defendant formed a written contract prohibiting Defendant from selling, offering to sell, promoting, and/or advertising any products and materials bearing any of the Travelers Marks.

97.     Travelers has performed fully under the terms of the December 7, 2019 Contract.

98.     Defendant breached the December 7, 2019 Contract by promoting, advertising, selling, and/or offering to sell products bearing the Travelers Marks on at least February 15, 2023 and March 8, 2023.

99.     As a direct and proximate cause of Defendant's breaches of the December 7, 2019 Contract, Travelers has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Travelers prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A.     An Order declaring that Defendant's use of the Travelers Marks constitutes trademark counterfeiting, trademark infringement, unfair competition, and unfair trade practices, and is likely to dilute the Travelers Marks under federal and/or state law, and is a breach of the December 7, 2019 Contract, as detailed above;

B.     An injunction permanently enjoining Defendant and its employees, contractors, officers, directors, principals, parents, subsidiaries, affiliates, related companies, and all persons in active concert or participation with any of them:

1.     From using or displaying any of the Travelers Marks including, but not limited to, in connection with any other wording or designs, and from using any other

38

marks, logos, designs, images, designations, or indicators that are confusingly similar to any of the Travelers Marks, or likely to dilute the distinctiveness of any of the Travelers Marks, in any unauthorized manner in connection with any products or services, including without limitation Defendant's promotional products, Defendant's website(s), any other websites or online platforms including social media and apps, promotional and advertising materials and signage;

2. From representing by any means whatsoever, directly or indirectly, that Defendant, any products or services offered by Defendant, or any activities undertaken by Defendant, are associated or connected in any way with Travelers including, but not limited to, using any of the Travelers Marks or any confusingly similar designs, images, logos, icons, or marks; and

3. Instructing, assisting, aiding, or abetting any other person or business entity in engaging or in performing any of the activities referred to in subparagraphs B.1 through B.2 above;

C. An Order directing Defendant to immediately destroy or permanently remove, as applicable, the Travelers Marks from all of Defendant's products, signage, websites, third-party websites (including, but not limited to, Defendant's social media pages), advertising, promotional materials, emails, television commercials, videos, posters, displays, brochures, catalogs, newsletters, manuals, forms, stationery, promotional merchandise, print materials, and any other materials and things that bear or display any of the Travelers Marks, or any other designs, images, logos, icons, or marks that are confusingly similar to or likely to dilute any of the Travelers Marks;

D.      An Order directing Defendant to immediately cancel all printing and placements of any products, advertisements, promotional materials, signs, and listings, including directory listings, in any media or format bearing or displaying any of the Travelers Marks, or any other designs, images, logos, icons, or marks that are confusingly similar to or likely to dilute any of the Travelers Marks;

E.      An Order directing Defendant to file with this Court and serve on Travelers' attorneys, within thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the injunction;

F.      An Order requiring Defendant to pay statutory damages in accordance with 15 U.S.C. § 1117(c) of up to $2,000,000 per mark per type of product or service sold, offered for sale, or distributed by Defendant bearing marks deemed to be counterfeits of the TRAVELERS, **TRAVELERS**, and/or marks;

G.      An Order requiring Defendant to account for and pay to Travelers any and all profits arising from the foregoing acts of infringement, false designation of origin, dilution, and unfair competition, and increasing such profits for payment to Travelers in accordance with 15 U.S.C. § 1117 and other applicable statutes and laws;

H.      An Order requiring Defendant to pay Travelers compensatory damages in an amount as yet undetermined caused by the foregoing acts of infringement, false designation of origin, dilution, and unfair competition, and trebling such compensatory damages for payment to Travelers in accordance with 15 U.S.C. § 1117 and other applicable statutes and laws;

40

I.      An Order requiring Defendant to pay Travelers compensatory damages in an amount as yet undetermined caused by the foregoing acts of unfair competition and unfair trade practices under Conn. Gen. Stat. 42-110b-q and other applicable statutes and laws;

J.      An Order requiring Defendant to pay Travelers punitive damages in an amount as yet undetermined caused by the foregoing acts of Defendant under Conn. Gen. Stat. § 42-110g and other applicable laws;

K.      An Order requiring Defendant to pay Travelers compensatory damages in an amount as yet undetermined caused by the foregoing breach of the December 7, 2019 Contract including, but not limited to, $5,000 in liquidated damages per breach;

L.      An Order requiring Defendant to pay Travelers' costs and attorney's fees in this action pursuant to 15 U.S.C. § 1117, the December 7, 2019 Contract, and other applicable statutes and laws, including Conn. Gen. Stat. §§ 42-110b-q; and

M.      Other relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Travelers demands trial by jury in this action of all issues triable by jury in this matter.

Dated:  June 15, 2023.                    Respectfully submitted,


                                          *s/ Elizabeth A. Alquist*
                                          Elizabeth A. Alquist (ct15643)
                                          Caitlin M. Barrett (ct31379)
                                          DAY PITNEY, LLP
                                          242 Trumbull Street
                                          Hartford, CT 06103-1212
                                          Telephone:      860.275-0100
                                          Facsimile:      860.275.0343
                                          Email:    eaalquist@daypitney.com
                                                    cbarrett@daypitney.com


                  Of Counsel:            David M. Kelly (application for *pro hac vice*
                                          admission to be filed)
                                          Jason M. Joyal (application for *pro hac vice*
                                          admission to be filed)
                                          KELLY IP, LLP
                                          1300 19th Street NW, Suite 420
                                          Washington, D.C. 20036
                                          Telephone:      202. 808-3570
                                          Facsimile:      202.408.4400
                                          Email:    david.kelly@kelly-ip.com
                                                    jason.joyal@kelly-ip.com
                                          Attorneys for Plaintiff,
                                          The Travelers Indemnity Company

**<u>CERTIFICATION</u>**

I hereby certify that on June 15, 2023, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Elizabeth A. Alquist*

Elizabeth A. Alquist (ct15643)